UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RICKIE STORM,<br><br>　　　　　　Petitioner,<br><br>　v.<br><br>BRENT REINKE, et al,<br><br>　　　　　　Respondents. | Case No. 1:12-cv-00001-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

　　　　Petitioner Rickie Storm filed a Petition for Writ of Habeas Corpus challenging his parole revocation arising from his state court conviction. (Dkt. 1.) The Court denied Respondents' Motion to Dismiss and ordered Respondents to file a response to the Petition. (Dkt. 24.) Respondents have filed their Response, and Petitioner has filed a Reply. (Dkt. 26, 30.) While Petitioner originally requested permission to file a sur-reply and requested oral argument (Dkt. 28, 29), he has since withdrawn those requests and asks the Court to make a ruling based on the briefing before the Court. (Dkt. 34.)

　　　　Having reviewed the record and the parties' briefing, the Court finds that oral argument is unnecessary, and enters the following Order giving Petitioner notice that it intends to deny and dismiss the Petition for Writ of Habeas Corpus for the reason set forth

**MEMORANDUM DECISION AND ORDER - 1**

herein below and providing him with an opportunity for a final response to show cause why this case should not be dismissed with prejudice.

## CONSIDERATION OF MERITS OF PETITION

**1.  Standard of Law**

    A.  *AEDPA Review Standard*

Federal habeas corpus relief may be granted on claims adjudicated on the merits in a state court judgment when the federal court determines that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under § 2254(d), as amended by the Anti-terrorism and Effective Death Penalty Act (AEDPA), federal habeas corpus relief is further limited to instances where the state-court adjudication of the merits:

> 1.  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2.  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

A state court need not "give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011).

When a party contests the state court's legal conclusions, including application of the law to the facts, § 2254(d)(1) governs. That section consists of two alternative tests: the "contrary to" test and the "unreasonable application" test.

**MEMORANDUM DECISION AND ORDER - 2**

Under the first test, for a decision to be "contrary to" clearly established federal law, the petitioner must show that the state court applied a rule of law different from the governing law set forth in United States Supreme Court precedent, or that the state court confronted a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrived at a result different from the Court's precedent. *Williams v. Taylor*, 529 U.S. 362, 404-06 (2000).

Under the second test, to satisfy the "unreasonable application" clause of § 2254(d)(1), the petitioner must show that the state court was "unreasonable in applying the governing legal principle to the facts of the case." *Williams*, 529 U.S. at 413. The United States Supreme Court has explained: "Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error." *White v. Woodall*, 134 S.Ct. 1697, 1706 (2014).

A federal court cannot grant relief simply because it concludes in its independent judgment that the decision is incorrect or wrong; the state court's application of federal law must be objectively unreasonable to warrant relief. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Bell v. Cone*, 535 U.S. 685, 694 (2002). To warrant habeas corpus relief, a petitioner must show that the challenged state-court ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S.Ct. 770, 786-87 (2011).

**MEMORANDUM DECISION AND ORDER - 3**

In *Richter*, the United States Supreme Court explained that, under § 2254(d), a habeas court (1) "must determine what arguments or theories supported or . . . could have supported, the state court's decision;" and (2) "then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Id*. at 786. If fairminded jurists could disagree on the correctness of the state court's decision, then a federal court cannot grant relief under § 2254(d)(1). *Id*. The Supreme Court emphasized: "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (internal citation omitted).

As to the facts, the United States Supreme Court has clarified "that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011). This means that evidence not presented to the state court may not be introduced on federal habeas review if a claim was adjudicated on the merits in state court and if the underlying factual determination of the state court was not unreasonable. *See Murray v. Schriro*, 745 F.3d 984, 999 (9th Cir. 2014).

**B.** *United States Supreme Court Precedent Governing Parole Revocation*

Parole revocation is not part of a criminal prosecution. *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972). Revocation of parole is remedial rather than punitive, because it seeks to protect the welfare of parolees and the safety of society. *Gagnon v. Scarpelli*, 411 U.S. 778, 783-84 (1973); *Morrissey*, 408 U.S. at 477.

The termination of parole results in a deprivation of liberty. However, because it is not part of a criminal prosecution, "the full panoply of rights due a defendant in a [criminal] proceeding does not apply to parole revocations." *Morrissey*, 408 U.S. at 481. Rather, only "the minimum requirements of due process" are required, which include the following:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Id*. at 480.

**2.    Background**

In 1981, Petitioner was convicted of rape. He served his complete sentence and was released in 1988. (State's Lodging A-1, pp. 22) In 2004, Petitioner was convicted of two counts of grand theft and one count of possession of a controlled substance. (State's Lodging A-1, pp. 53-56.) He was sentenced to unified terms of 14 years on the grand theft counts, and 7 years on the possession count. (*Id*.)

In January 2007, Petitioner was granted parole, but subsequently violated parole and was returned to prison. (State's Lodging A-1, p. 67.) On August 26, 2008, Petitioner was granted parole a second time, with no condition that he be supervised under the "sex offender caseload." (State's Lodging A-1, pp. 53-54.) On August 28, 2008, after the

grant of parole and during supervision of the parole, Petitioner signed a new agreement that placed him on the sex offender caseload, due to his 1981 rape conviction. (*Id*., pp. 22-25.) Petitioner asserts that he signed the new agreement under duress, because Defendant Burgess threatened to send him back to prison immediately if he did not sign it. (Dkt. 30.)

On January 16, 2009, Petitioner's parole officer, Darwin Cameron, filed a report of parole violation alleging 14 parole violations and recommending revocation of parole and incarceration. (*Id.*, pp. 56-64.)

On April 8, 2009, Parole Hearing Officer Christine Lewis conducted a parole violation hearing. At that time, Petitioner conceded that he received notice of the parole violation report and the hearing, conceded that he had signed the Agreement of Parole that apparently included the sex offender parole terms, and stated that he did not need a continuance of the hearing. (*Id*., pp. 67-68.) Petitioner was advised of the purpose of the hearing, of his rights, and of the fact that, if found guilty, his parole could be revoked. (*Id*., p 68.)

At the conclusion of the hearing, Hearing Officer Lewis dismissed seven of the charged violations, and found Petitioner guilty of five violations, including failing to obey laws (writing insufficient funds checks and pleading guilty to DUI), biting a police officer, failing to submit to a polygraph to determine whether he needed sex offender treatment, failing to submit to a drug and alcohol test at the time he was driving under the influence, and failing to check in with his parole officer. Petitioner admitted to

**MEMORANDUM DECISION AND ORDER - 6**

committing two additional violations: refusing to submit to a drug and alcohol test after driving and crashing his car, and failing to remain drug free and entering an establishment where alcohol was the main source of income. Hearing Officer Lewis recommended that parole be revoked. (*Id*., pp. 67-82.)

On July 14, 2009, the Idaho Commission of Pardons and Parole (ICPP) held a parole revocation hearing. Petitioner conceded that he received notice of the report and hearing, and stated that he did not need a continuance. The ICPP adopted the findings of the hearing officer, revoked parole, and scheduled Petitioner's next parole hearing for July 2014. (*Id*., pp. 83-91.)

On February 24, 2010, Petitioner filed a state habeas corpus petition challenging his parole revocation. (*Id*., pp. 19-47.) The petition was denied. (*Id*., pp. 170-75.) On appeal, the Idaho Court of Appeals affirmed denial of the petition for writ of habeas corpus. (State's Lodging B-7.) The Idaho Supreme Court denied the petition for review, and the remittitur was issued, concluding the state court habeas corpus action. (State's Lodgings B-10, B-11.)

3. Discussion

    A. *Scope and Cognizability of Petitioner's Claims*

The Court agrees with Respondents' contention that all five of Petitioner's habeas corpus claims center on allegations that his constitutional rights were violated because he was placed on the sex offender caseload for a criminal offense unrelated to a prior sex

offense, for which Petitioner had already served his complete sentence. Petitioner does not bring a claim contesting the seven other grounds that support his parole revocation.

The five habeas corpus claims are as follows: (1) Respondents violated Petitioner's due process rights because Petitioner's parole officer changed his "parole contract" by requiring that he be supervised as a sex offender as a result of his 1981 rape conviction; (2) the Idaho Department of Correction (IDOC) policy requiring sex offender supervision violates the Due Process Clause and the Ex Post Facto Clause; (3) Petitioner's "liberty interests" were violated when the additional sex offender terms were added after he was initially placed on parole; (4) Respondents' decision to place him on the "sex offender caseload" because of his 1981 rape conviction violated the Ex Post Facto Clause; and (5) Respondents violated Petitioner's First Amendment right to free exercise of religion, because his rights were curtailed when he was placed on the sex offender caseload.

In Petitioner's Response to Respondents' Answer and Motion to Dismiss, Petitioner states that he signed a parole agreement containing certain conditions on August 26, 2008. He asserts that he was coerced into signing a new parole agreement containing both old conditions and new sex offender conditions on August 28, 2008. He argues that the parole conditions or restrictions that seem unrelated to the sex offender restrictions impermissibly "hid" the sex offender violations. (Dkt. 30, p. 7.)

In reviewing the claims brought by Petitioner, the Court first summarily concludes that, because Claim 5 does not bear on Petitioner's custody, it fails to state a federal

habeas corpus claim upon which relief can be granted. The remainder of this discussion pertains to Claims 1 through 4 only.

### B. *Summary of State Court Decision Being Challenged*

On appeal from Petitioner's challenge to the parole revocation, Petitioner asked the Court of Appeals to review the merits of his claims relating to the sex offender supervision restrictions, and the merits of the parole revocation decision. (State's Lodging B-7, p. 3.) The Idaho Court of Appeals determined that Petitioner's objections to having been supervised under the standards for a sex offender were moot, because his "parole was validly revoked based on other violations that had nothing to do with his supervision as a sex offender." (*Id*., p. 7, p. 8 (footnote omitted).) The Idaho Court of Appeals reasoned: "Because he is no longer on parole, the relief he seeks—parole without sex offender supervision—is not within the power of this Court to grant and therefore addressing the issue would have no practical effects." (State's Lodging B-7, p. 8.) In a footnote, the Idaho Court of Appeals observed: "We note that Storm has received assurances from the director of the Idaho Department of Correction that he will not be supervised as a sex offender if he is ever granted parole in the future." (*Id*., p. 8 n.3.)

In its opinion, the Idaho Court of Appeals clearly addressed the merits of Petitioner's claim that his parole was improperly revoked, and it did not find it necessary to specifically address Petitioner's sex offender restriction contentions in finding that his parole was properly revoked. The Idaho Supreme Court denied the petition for review without comment.

**MEMORANDUM DECISION AND ORDER - 9**

This Court concludes that the Idaho Court of Appeals's decision should be categorized as an adjudication of the merits of the validity of the parole revocation, regardless of whether it addressed Petitioner's subclaims about the propriety of adding sex offender restrictions to Petitioner's parole conditions. To demonstrate that he is entitled to habeas corpus relief, Petitioner must show that the state court decision affirming the revocation of his parole was unconstitutional. Hence, the decision is entitled to AEDPA deference.

### C. *AEDPA Review of Comprehensive Parole Revocation Decision*

Respondents argue, and the Court agrees, that the United States Supreme Court has not addressed a set of facts like those in the Petition. Petitioner has not pointed to, nor has the Court found in its independent research, any case law to support his contention that the Idaho Court of Appeals's decision affirming the revocation of Petitioner's parole is contrary to, or an unreasonable application of, United States Supreme Court precedent.

The United States Supreme Court has acknowledged that § 2254(d)(1) does not require an "identical factual pattern before a legal rule must be applied." *Woodall,* 134 S.Ct. at 1706 (citation omitted). However, to warrant relief, it must be "so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *Id.* (citing *Richter*).

There is no case law from the Supreme Court demonstrating that it is unconstitutional to revoke parole for reasons such as "writing insufficient fund checks, possessing illegal drugs, driving under the influence (DUI), attempting to assault a police

**MEMORANDUM DECISION AND ORDER - 10**

officer, attempting to assault hospital staff after his DUI arrest, failing to submit to a drug and alcohol test, not immediately reporting to one's residence upon release from prison, staying at a different residence without permission, not checking in which his parole officer immediately upon release from prison, not residing at his approved residence for four days, not returning one's parole officer's phone calls, entering an establishment where alcohol is the main source of income, or associating with persons who were involved with illegal activities" (State's Lodging B-7, p.7)—either with or without an overlay of sex offender restrictions.

As noted above, the United States Supreme Court has addressed the due process rights of parolees in parole revocation proceedings. Here, Petitioner is not contesting the procedural due process aspects of his parole revocation prehearing and hearing procedures. The United States Supreme Court has not addressed Petitioner's particular due process claim—which is altogether different—whether states can change the conditions of parole midstream and require a parolee to submit to sex offender treatment, where his current conviction is not for a sex offense, but based on a distant sex offense conviction for which a sentence has been served. Neither has the United States Supreme Court held that regular parole restrictions that seem unrelated to sex offender restrictions impermissibly "hide" sex offender violations, and, thus, are unconstitutional. (See Dkt. 30, p. 7.) Similarly, no Supreme Court precedent supports Petitioner's argument made to the Idaho Court of Appeals that the state district court "erred in holding that his claims arising out of sex offender supervision are moot because if he was improperly placed on

**MEMORANDUM DECISION AND ORDER - 11**

sex offender supervision in violation of his constitutional rights any parole violations he committed afterward [regardless of their lack of a relationship to sex offender supervision] are rendered 'null and void.'" (State's Lodging B-7, p. 3 (parenthetical added).)

In addition to remaining silent on the propriety of conditions of parole, the United States Supreme Court has never clarified what quantum of evidence is necessary to satisfy due process in a parole board's decision to revoke parole. In the context of prison disciplinary decisions, the Supreme Court has held that there had to be some evidence to support the prison officials' decision. *See Superintendent v. Hill*, 472 U.S. 445, 455 (1985). But the Supreme Court had never extended *Superintendent v. Hill* to the parole revocation context. Without any similar precedent from the United States Supreme Court, Petitioner's argument that the parole revocation decision rests on inadequate grounds necessarily fails under AEDPA.

As the parties have noted, the United States Court of Appeals for the Ninth Circuit has addressed a similar issue in *Neal v. Shimoda*, 131 F.3d 818 (9th Cir. 1997), but only as a procedural due process issue in the context of a civil rights claim. *See Neal*, 131 F.3d at 831. In that case, the court held that Mr. Neal, who had never been convicted of a sex offense and had never had an opportunity to formally challenge the imposition of the "sex offender" label in an adversarial setting, must be afforded the minimum due process protections to be able to challenge his classification as a sex offender. While *Neal* addresses the same type of due process claim Petitioner has brought—due process in the

**MEMORANDUM DECISION AND ORDER - 12**

imposition of parole conditions and not due process in the parole revocation procedures—the problem for him is twofold: (1) under AEDPA, federal habeas corpus relief cannot be premised upon circuit precedent, and (2) the errors Petitioner raises did not result in unlawful custody, but are more of the nature of a civil rights violation, as in *Neal*.

4.  **Conclusion and Petitioner's Request for State Court Records**

For all of these reasons, the Court concludes that Petitioner's Petition is subject to denial and dismissal. The Court gives Petitioner notice that it intends to deny and dismiss the Petition. Because Petitioner asserts that he needs other portions of the state court record to contest denial or dismissal, the Court will order Respondents to provide portions of the state court record to Petitioner, and provide Petitioner with a final opportunity to submit a written response to this Order, which shall be filed within **21 days** after he receives any additional portions of the state court record from Respondents.

Within **14 days** after entry of this Order, Petitioner shall file a notice indicating which records in Respondents' Notice of Lodging that Petitioner has in his possession and which records Petitioner does not. Within **14 days** thereafter, Respondents shall provide Petitioner with a copy of any of the records referenced in Respondents' Answer and Brief in Support of Dismissal that Petitioner does not already possess, so that Petitioner ends up with one complete set of the records referenced in Rule 5(c) and 5(d) of the Rules Governing § 2254 Cases. Respondents shall file a notice of compliance. Additional records that are or were provided as a courtesy to the Court but that are not

**MEMORANDUM DECISION AND ORDER - 13**

referenced in Respondents' Answer and Brief in Support of Dismissal and are not included in Rule 5(c) or 5(d) need not be provided to Petitioner, but Petitioner may obtain those from the state clerk of court at his own expense, if he desires.

Petitioner also shall indicate in his notice whether he believes any additional records exist that are relevant to a determination of the claims in the petition or to any preliminary procedural issues. In the notice of compliance, Respondents shall indicate whether they agree that any additional records identified by Petitioner are relevant and whether they have been provided to Petitioner, or they shall inform Petitioner that such documents will not be provided, whereupon Petitioner may obtain those records from the state clerk of court at his own expense and provide copies to Respondents and the Court.

## ORDER

**IT IS ORDERED:**

1. The Clerk of Court shall indicate on the Docket that Petitioner's Motion for Oral Argument and Motion to File Sur-Reply (Dkt. 28, 29) have been WITHDRAWN by Petitioner (Dkt. 34) and are no longer pending.

2. Petitioner and Respondents shall follow the instructions set forth above to provide Petitioner with portions of the state court record he does not possess.

3. Petitioner shall file a final response to this Order within **21 days** after receipt of any additional records provided by Respondents.

**MEMORANDUM DECISION AND ORDER - 14**



DATED: **September 29, 2014**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge

**MEMORANDUM DECISION AND ORDER - 15**