UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RICKIE STORM,<br><br>　　　　　　　Petitioner,<br><br>vs.<br><br>BRENT REINKE, et al.,<br><br>　　　　　　　Respondents. | Case No. 1:12-cv-00001-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

　　　　Petitioner Rickie Storm filed a Petition for Writ of Habeas Corpus challenging the revocation of his parole, arising from a state criminal conviction. (Dkt. 1.) The Court denied Respondents' Motion to Dismiss and ordered them to file a response to the Petition. (Dkt. 24.) Respondents have filed their Response, and Petitioner has filed a Reply. (Dkt. 26, 30.) While Petitioner originally requested permission to file a sur-reply and requested oral argument (Dkt. 28, 29), he has since withdrawn those requests and asks the Court to rule on the briefing before the Court. (Dkt. 34.)

　　　　Petitioner also notified the Court that his case file had been destroyed while he was on parole. The Court provided Petitioner with a new copy, and gave him 21 days to file any final response to the Court's notice of intent to dismiss this case. (Dkt. 48.) Petitioner has filed his final response. (Dkt. 49.)

**MEMORANDUM DECISION AND ORDER - 1**

Having reviewed the record and the parties' briefing, the Court finds that oral argument is unnecessary. Accordingly, the Court enters the following Order denying and dismissing the Petition for Writ of Habeas Corpus.

## CONSIDERATION OF MERITS OF PETITION

**1.      Standard of Law**

Federal habeas corpus relief may be granted where a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Where the petitioner challenges a state court judgment in which the petitioner's federal claims were adjudicated on the merits, then Title 28 U.S.C.§ 2254(d), as amended by the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), applies. Title 28 U.S.C.§ 2254(d) limits relief to instances where the state court's adjudication of the petitioner's claim:

> 1.   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2.   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d). A federal habeas court reviews the state court's "last reasoned decision" in determining whether a petitioner is entitled to relief. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991).

Where a petitioner contests the state court's legal conclusions, including application of the law to the facts, § 2254(d)(1) governs. That section consists of two alternative tests: the "contrary to" test and the "unreasonable application" test.

Under the first test, a state court's decision is "contrary to" clearly established federal law "if the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court] [has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002).

Under the second test, to satisfy the "unreasonable application" clause of § 2254(d)(1) the petitioner must show that the state court—although it identified "the correct governing legal rule" from Supreme Court precedent—nonetheless "unreasonably applie[d] it to the facts of the particular state prisoner's case." *Williams (Terry) v. Taylor*, 529 U.S. 362, 407 (2000). "Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably *applies* [Supreme Court] precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error." *White v. Woodall*, 134 S. Ct. 1697, 1706 (2014).

A federal court cannot grant habeas relief simply because it concludes in its independent judgment that the state court's decision is incorrect or wrong; rather, the state court's application of federal law must be objectively unreasonable to warrant relief. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Bell*, 535 U.S. at 694. If fairminded jurists

could disagree on the correctness of the state court's decision, then relief is not warranted under § 2254(d)(1). *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). The Supreme Court emphasized that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (internal citation omitted).

Though the source of clearly established federal law must come only from the holdings of the United States Supreme Court, circuit precedent may be persuasive authority for determining whether a state court decision is an unreasonable application of Supreme Court precedent. *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999). However, circuit law may not be used "to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013).

If the state appellate court did not decide a properly-asserted federal claim on the merits—or if the state court's factual findings are unreasonable under § 2254(d)(2)—then § 2254(d)(1) does not apply, and the federal district court reviews the claim de novo. *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002). In such a case, as in the pre-AEDPA era, a district court can draw from both United States Supreme Court and well as circuit precedent, limited only by the non-retroactivity rule of *Teague v. Lane*, 489 U.S. 288 (1989).

Under de novo review, if the factual findings of the state court are not unreasonable, the Court must apply the presumption of correctness found in § 2254(e)(1)

to any facts found by the state courts. *Pirtle*, 313 F.3d at 1167. Contrarily, if a state court factual determination is unreasonable, or if there are no state court factual findings, the federal court is not limited by § 2254(e)(1),the federal district court may consider evidence outside the state court record, except to the extent that § 2254(e)(2) might apply (limiting evidentiary hearings for failure to develop the factual basis of the claim in state court). *Murray v. Schriro*, 745 F.3d 984, 1000 (9th Cir. 2014).

Parole revocation is not part of a criminal prosecution. *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972). Revocation of parole is remedial rather than punitive, because it seeks to protect the welfare of parolees and the safety of society. *Gagnon v. Scarpelli*, 411 U.S. 778, 783-84 (1973); *Morrissey*, 408 U.S. at 477.

The termination of parole results in a deprivation of liberty. However, because it is not part of a criminal prosecution, "the full panoply of rights due a defendant in a [criminal] proceeding does not apply to parole revocations." *Morrissey*, 408 U.S. at 481. Rather, only "the minimum requirements of due process" are required, which include the following: (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written

statement by the factfinders as to the evidence relied on and reasons for revoking parole. *Id*. at 480.

2. **Background**

In 1981, Petitioner was convicted of rape. He served his complete sentence and was released in 1988. (State's Lodging A-1, pp. 22-25.) In 2004, Petitioner was convicted of two counts of grand theft and one count of possession of a controlled substance. (State's Lodging A-1, pp. 53-56.) He was sentenced to unified terms of 14 years on the grand theft counts, and 7 years on the possession count. (*Id*.)

In January 2007, Petitioner was granted parole, but he subsequently violated parole and was returned to prison. (State's Lodging A-1, p. 67.) On August 26, 2008, Petitioner was granted parole a second time, with no condition that he be supervised under the "sex offender caseload." (State's Lodging A-1, pp. 53-54.) On the first day of his release to parole, Petitioner failed to report to his parole officer and the New Hope rehabilitation center, as instructed. (*Id*., p. 89.) On August 27, Petitioner admitted to having stayed overnight at a place not approved by his parole officer or the Idaho Commission of Pardons and Parole (ICPP). (*Id*.)

On August 28, 2008, Petitioner signed a new parole agreement that placed him on the sex offender caseload, due to his 1981 rape conviction. (*Id*., pp. 22-25.) Petitioner asserts that he signed the new agreement under duress, because his parole officer threatened to send him back to prison immediately if he did not sign it. (Dkt. 30.)

On January 16, 2009, Petitioner's parole officer, Darwin Cameron, filed a report of parole violation alleging 14 parole violations and recommending revocation of parole and incarceration. (*Id.*, pp. 56-64.) On April 8, 2009, parole hearing officer Christine Lewis conducted a parole violation hearing. At that time, Petitioner conceded that he received notice of the parole violation report and the hearing, admitted that he had signed the Agreement of Parole that included the sex offender parole terms, and stated that he did not need a continuance of the hearing. (*Id.*, pp. 67-68.) Petitioner was advised of the purpose of the hearing, of his rights, and of the fact that, if found guilty, his parole could be revoked. (*Id.*, p 68.)

At the conclusion of the hearing, Lewis dismissed seven of the charged violations, and found Petitioner guilty of five violations, including failing to obey laws (writing insufficient funds checks and pleading guilty to DUI), biting a police officer, failing to submit to a polygraph to determine whether he needed sex offender treatment, failing to submit to a drug and alcohol test at the time he was driving under the influence, and failing to check in with his parole officer. Petitioner admitted to committing additional violations: refusing to submit to a drug and alcohol test after driving and crashing his car, failing to remain drug free, and entering an establishment where alcohol was the main source of income. Lewis recommended that parole be revoked. (*Id.*, pp. 67-82.)

On June 18, 2009, in response to a prison grievance filed by Petitioner, IDOC Director Brent Reinke sent Petitioner a letter stating that, due to recent changes in sex

offender assessments, Petitioner's sex offense was too old to accurately evaluate within the new assessments. Reinke stated that, if the ICPP reinstated Petitioner's parole after the upcoming hearing on the charged parole violations, Petitioner would not be placed on a sex offender caseload. (Dkt. 49, p. 6.)

On July 14, 2009, the ICPP held a parole revocation hearing on the charged parole violations. Petitioner conceded that he received notice of the report and hearing, and stated that he did not need a continuance. The ICPP adopted the findings of the hearing officer, revoked parole, and scheduled Petitioner's next parole hearing for July 2014. (*Id.*, pp. 83-91.)

On February 24, 2010, Petitioner filed a state habeas corpus petition challenging his parole revocation. (*Id.*, pp. 19-47.) The petition was denied. (*Id.*, pp. 170-75.) On appeal, the Idaho Court of Appeals affirmed denial of the petition for writ of habeas corpus. (State's Lodging B-7.) The Idaho Supreme Court denied the petition for review, and the remittitur was issued, which concluded the state court habeas corpus action. (State's Lodgings B-10, B-11.)

Petitioner's five habeas corpus claims contained in his federal Petition for Writ of Habeas Corpus are as follows: (1) Respondents violated Petitioner's due process rights because Petitioner's parole officer changed his "parole contract" by requiring that he be supervised as a sex offender as a result of his 1981 rape conviction; (2) the Idaho Department of Correction (IDOC) policy requiring sex offender supervision violates the

Due Process Clause and the Ex Post Facto Clause; (3) Petitioner's "liberty interests" were violated when the additional sex offender terms were added after he was initially placed on parole; (4) Respondents' decision to place him on the "sex offender caseload" because of his 1981 rape conviction violated the Ex Post Facto Clause; and (5) Respondents violated Petitioner's First Amendment right to free exercise of religion, because his ability and right to worship were curtailed when he was placed on the sex offender caseload.

3.  Discussion

    A. *Noncognizable Claims*

    The Court summarily concludes that Claim 5, regarding Petitioner's free exercise rights, does not bear on Petitioner's custody. Therefore, it fails to state a federal habeas corpus claim upon which relief can be granted and is subject to dismissal. The remainder of this discussion pertains to Claims 1 through 4.

    B. *Summary of State Court Decision Being Challenged*

    The state district court found that Storm admitted to most of the parole violations. (Dkt. 1-1, p. 7.) Because the parole violations sufficiently supported the decision to revoke parole, Petitioner's habeas corpus petition was denied.

    On appeal, the Idaho Court of Appeals addressed the merits of Petitioner's claim that his parole was improperly revoked. The Court of Appeals did not address the sex offender grounds Petitioner contested, but found other adequate grounds for parole

revocation. The Court of Appeals determined that the sex offender grounds were moot as a result of the fact that his parole was validly revoked on other grounds and he was no longer on parole. (State's Lodging B-7, p. 8 (footnote omitted).) The Idaho Court of Appeals reasoned: "Because he is no longer on parole, the relief he seeks—parole without sex offender supervision—is not within the power of this Court to grant and therefore addressing the issue would have no practical effects." *Id*. The Idaho Supreme Court denied the petition for review without comment.

This Court concludes that the Idaho Court of Appeals's decision constitutes a decision on the merits of the validity of the parole revocation, even though the Idaho Court of Appeals did not address Petitioner's subclaims about the propriety of adding sex offender restrictions to Petitioner's parole conditions. To show he is entitled to federal habeas corpus relief, Petitioner must show that his detention is unlawful; the Court of Appeals determined that his detention is lawful, based upon the non-sex-offender conditions. Because the Idaho Court of Appeals's decision addressed the merits of Petitioner's parole revocation, the decision is entitled to AEDPA deference.

### C. *AEDPA Review of Parole Revocation Decision - No United States Supreme Court Precedent to Support Claims*

Respondents argue, and the Court agrees, that, as to Petitioner's remaining four claims, the United States Supreme Court has not addressed a similar set of facts under the Due Process Clause or the Ex Post Facto Clause, or at all. Petitioner has not identified, nor has the Court found in its independent research, any case law to support Petitioner's

contention that the Idaho Court of Appeals's decision to revoke Petitioner's parole is contrary to, or an unreasonable application of, United States Supreme Court precedent.

"Section 2254(d)(1) does not require state courts to extend . . . precedent or license federal courts to treat the failure to do so as error." *White v. Woodall*, 134 S. Ct. at 1706. While § 2254(d)(1) does not require an "identical factual pattern before a legal rule must be applied," *id*. at 1706, to warrant relief, it must be "so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *Id*. at 1706-07 (citing *Richter*).

The Court first considers whether the non-sex-offender grounds for Petitioner's parole revocation compel the outcome Petitioner seeks, because Petitioner is currently detained on the grounds that the Idaho Court of Appeals upheld his parole revocation on the non-sex-offender violations. There is no case law from the United States Supreme Court holding that it is unconstitutional to revoke parole for any of the reasons supporting Petitioner's parole revocation: writing insufficient fund checks, possessing illegal drugs, driving under the influence (DUI), attempting to assault a police officer, attempting to assault hospital staff after his DUI arrest, failing to submit to a drug and alcohol test, failing to submit to a polygraph test, not immediately reporting to one's residence upon release from prison, staying at a different residence without permission, not checking in with one's parole officer immediately upon release from prison, not residing at an approved residence for four days, not returning one's parole officer's phone calls,

entering an establishment where alcohol is the main source of income, or associating with persons who were involved with illegal activities.

Next, the Court determines whether the United States Supreme Court has addressed the constitutionality of imposing strict conditions for sex offenders in a parole or probation setting. The Court finds no case prohibiting strict conditions for sex offenders when they are released on parole or probation. Neither are there any cases from the Supreme Court governing the question of whether additional parole restrictions can be imposed *after* the State and the parolee initially agreed to a different set of conditions. Finally, there is no Supreme Court precedent regarding whether a person who has already completed a sex offender sentence can be required to submit to sex offender conditions while on parole for an unrelated offense.

In summary, no United States Supreme Court precedent exists to support Petitioner's claims for relief. Accordingly, §2254(d)(1) precludes relief.

### D. The State May Impose Unilateral Parole Terms without Violating Due Process

The State has a strong interest in imposing restrictions that will keep the public safe, and there is no federal right to be released on parole before the expiration of one's sentence. *See Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1,7 (1979); *Morrissey v. Brewer*, 408 U.S. at 477. Petitioner does not contend that he did not agree to the new conditions; rather, he argues that the State gave him no choice but to agree to the conditions if he wanted to remain on parole. (Dkt. 49, p. 6-7.) Nothing

in either federal or state law can be construed as permitting a parolee to bargain for his parole conditions; rather, the State sets conditions as it sees fit for the purposes of public safety and prisoner rehabilitation, and each parolee is free to agree to all of the conditions and be paroled, or disagree with the conditions and decline parole. Petitioner has not shown that the Due Process Clause or any other constitutional provision is violated when a "parole contract" is amended by the State to include additional restrictions after parole has begun, and the parolee accepts the additional conditions rather than face parole revocation proceedings.

### E. Procedural Due Process Protections Exist only for Parole Revocation, not for Imposition of Parole Conditions

Petitioner is mistaken in his belief that the Due Process Clause requires the State to hold a parole hearing prior to addition of new parole conditions. The case law he relies upon governs the type of due process required after a parolee is accused of violating parole. *See Morrissey v. Brewer*, 408 U.S. at 482. This case law cannot be extended to fit Petitioner's set of facts, because Petitioner had notice of, and agreed to, the new conditions before any parole violation was issued.

As the parties have noted, the United States Court of Appeals for the Ninth Circuit addressed a similar issue in *Neal v. Shimoda*, 131 F.3d 818 (9th Cir. 1997) (consolidating *Neal v. Shimoda* and *Martinez v. Nobriga*), but only as a procedural due process issue in the context of a civil rights claim. *See id.* at 831. In that case, the court held that one of the plaintiffs, Mr. Neal, who had never been convicted of a sex offense and had never had an

**MEMORANDUM DECISION AND ORDER - 13**

opportunity to formally challenge the imposition of the "sex offender" label in an adversarial setting, must be afforded the minimum due process protections to be able to challenge his classification as a sex offender. However, the other plaintiff, Mr. Martinez, *had* been convicted of a sex offense, attempted rape, and so the court held:

> An inmate who has been convicted of a sex crime in a prior adversarial setting, whether as the result of a bench trial, jury trial, or plea agreement, has received the minimum protections required by due process. Prison officials need do no more than notify such an inmate that he has been classified as a sex offender because of his prior conviction for a sex crime.

*Neal*, 131 F.3d at 831.

Petitioner is like Mr. Martinez, not Mr. Neal, because Petitioner *has* been convicted of a sex offense in the past, for which he did have procedural due process protections. Even if *Neal* aided Petitioner's argument, federal habeas corpus relief cannot be premised upon circuit precedent.

### F. *Ex Post Facto Prohibitions Are Not Applicable*

The ex post facto provisions of the Constitution "forbid[] the Congress and the States to enact any law which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Weaver v. Graham*, 450 U.S. 24, 28 (1981); U.S.Const., Art. I, § 9, cl. 3; Art. I, § 10, cl. 1. To be an ex post facto violation, the law or action "must be retrospective, and it must disadvantage the offender affected by it." *Id*. at 29.

The United States Supreme Court has recognized that restrictive conditions of release imposed after sex offenders complete their sentences are not intended to be

punitive, but instead serve important non-punitive goals and, thus, do not violate the Ex Post Facto Clause. *See Smith v. Doe*, 538 U.S. 84, 103–106 (2003). Similarly, because conditions of release on parole are not intended to be punitive, the ex post facto provisions of the Constitution do not apply, regardless of whether the additional conditions were required of Petitioner before or after his release on parole. *Accord*, *Neal*, 131 F.3d at 827 (rejecting ex post facto argument).

### G. Habeas Corpus Relief Cannot Be Granted for Violations of IDOC Policy or Idaho Law

Many of Petitioner's arguments rest on Idaho Department of Correction policy and Idaho state law. He argues that parole officials had no authority to decide to change his parole conditions, but, rather, any parole condition changes should have come directly from the ICPP. (Dkt. 49, pp. 2-4.) *See Mellinger v. Idaho Department of Correction*, 757 P.2d 1213 (Idaho Ct. App. 1988).[1] These arguments are unhelpful, because federal habeas corpus relief cannot be granted on the ground that a conviction or sentence violates the state constitution or state law. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("Federal habeas corpus relief does not lie for errors of state law."); *see also Peltier v. Wright*, 15 F.3d 860, 861-62 (9th Cir. 1994) (noting that generally federal habeas corpus relief is unavailable for alleged errors in interpretation and application of state law).

---

[1] In *Mellinger*, the Court of Appeals determined that, under state law, the Board of Correction had responsibility to supervise parolees and could recommend conditions to the ICPP, but the ICPP must at least "administratively accept[] and approve" the conditions. 757 P.2d at 1219. In other words, "substantive conditions recommended by the Board cannot be imposed without the Commission's approval." *Id*. Even if Petitioner's state law arguments could be entertained, Petitioner would have to show that the new parole conditions added by parole officers were not subsequently approved or adopted by the ICPP, which is permitted under *Mellinger*.

**MEMORANDUM DECISION AND ORDER - 15**

5. **Conclusion**

For all of these reasons, the Court concludes that the Petition for Writ of Habeas Corpus is subject to denial and dismissal with prejudice, with the exception of Claim 5, which will be dismissed without prejudice.

**ORDER**

**IT IS ORDERED:**

1. The Petition for Writ of Habeas Corpus (Dkt. 1) is DENIED and DISMISSED with prejudice, with the exception of Claim 5, which is DIMISSED without prejudice.

2. Petitioner's "Prayer for Relief and Request for the Court to Enter a Final Order" (Dkt. 41) is GRANTED only to the extent that the Court had issued a final Order denying and dismissing the Petition for Writ of Habeas Corpus.

3. The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If Petitioner files a timely notice of appeal, the Clerk of Court shall forward a copy of the notice of appeal, together with this Order, to the United States Court of Appeals for the Ninth Circuit. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.



DATED: March 6, 2015

B. Lynn Winmill
Chief Judge
United States District Court